UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                      :
CHANSARATH DUONG,                                     :
                                                      :
                         Petitioner,                  :
              -v-                                     :          26-CV-3189
                                                      :
RAUL MALDONADO, JR., *in his official capacity*       :          **TEMPORARY**
*as Warden, Metropolitan Detention Center,*           :          **RESTRAINING**
*Brooklyn*; WILLIAM P. JOYCE, *in his official*       :          **ORDER & ORDER TO**
*capacity as Acting Field Office Director, New York*  :          **SHOW CAUSE**
*Field Office, U.S. Immigration and Customs*          :
*Enforcement*; TODD M. LYONS, *in his official*       :
*capacity as Acting Director, U.S. Immigration and*   :
*Customs Enforcement*; MARKWAYNE MULLIN,              :
*in his official capacity as Secretary, U.S.*         :
*Department of Homeland Security*; and TODD           :
BLANCHE, *in his official capacity as Acting*         :
*Attorney General of the United States,*              :
                                                      :
                         Respondents.                 :
                                                      :
-------------------------------------------------------------------X

**NINA R. MORRISON**, United States District Judge:

Petitioner Chansarath Duong is presently detained by Respondents at the

Metropolitan Detention Center ("MDC") and has been detained by Respondents there

and at other facilities since being taken into custody by Respondents on May 4, 2026.

Petitioner, through counsel, filed a Petition for a Writ of Habeas Corpus (the

"Petition"), ECF No. 1, on May 27, 2026, supported by accompanying exhibits,

alleging that his detention violates his constitutional and statutory rights.  This case

is assigned to the undersigned for all purposes.

1

Presently before the Court is Petitioner's application for a writ of habeas corpus, as well as a motion for entry of a Temporary Restraining Order and Preliminary Injunction, ECF No. 2 (May 28, 2026), supported by an accompanying Memorandum of Law, ECF No. 2-1, seeking, *inter alia*, an order directing Petitioner's immediate release from detention and restraining Respondents from re-detaining Petitioner for the pendency of the Court's adjudication of the underlying Petition. For the reasons outlined below, Petitioner's motion for a temporary restraining order is GRANTED.

## BACKGROUND

Petitioner was born in Cambodia in 1973 and is now 52 years old. Petitioner avers, and Respondents do not dispute, that he is a citizen of Cambodia who has resided in the United States since entering as a child refugee in 1982 and was previously a lawful permanent resident. ECF No. 1 ("Pet.") ¶¶ 1, 16. Petitioner further avers that his mother and father, his partner of more than thirty years, and his two sons are all United States citizens. *Id.* ¶ 17. Petitioner is employed as a heavy-machine operator. *Id.*

Petitioner does have a criminal history, although the present record does not fully establish the nature and extent of his prior contacts with law enforcement. The

parties agree that Petitioner was arrested and pled guilty to Third Degree Attempted Criminal Sale of a Controlled Substance in 1997. *Id.* ¶ 18; Resp. to Order to Show Cause ("Resp."), ECF No. 10 at 2. Petitioner avers that he was sentenced for this conduct on February 3, 1998 to an indeterminate term of one to three years, that this is his only criminal conviction, and that he has not been arrested on criminal charges since 1997. Pet. ¶ 18.

Respondents assert that Petitioner "has a long history with law enforcement." Resp. at 1. They contend that he was arrested in New York on January 7, 1991, when he was seventeen years old, for First Degree Robbery, Second Degree Robbery, Second Degree Assault, Third Degree Assault, Fourth Degree Criminal Possession of a Weapon, and Fourth Degree Grand Larceny. Decl. of Crystal Harris dated June 2, 2026 ("Harris Decl.") ¶ 4, ECF No. 10-1.[1] Respondents further contend that this matter was adjudicated as a Youthful Offense. *Id.* Respondents attach New York City Probation Department Records that, by and large, support Respondents' contentions as to this arrest. Resp. Ex. B, ECF No. 10-3. Respondents claim that Petitioner was also arrested on January 7, 1991 for Second Degree Criminal Use of a

---

[1] While this document is titled "Declaration of Deportation Officer Dmitry Rousseau," it is signed and includes attestations by Deportation Officer Crystal Harris. Harris Decl. at 1, 6.

3

Firearm and First Degree Auto Stripping.  Harris Decl. ¶ 4.  Respondents further claim that Petitioner was arrested again on a narcotics charge on December 30, 1999, *id.* ¶ 6; again on narcotics charges and a resisting arrest charge on January 7, 2000, *id.* ¶ 7; and again on narcotics charges on January 29, 2002, *id.* ¶ 8.[2]

Following Petitioner's 1997 guilty plea, on March 1, 1999, an immigration judge ordered Petitioner removed.  Pet. ¶ 19; Resp. Ex. W, ECF No. 11-1.  Petitioner did not appeal this order, and it became final.  Pet. ¶ 19.  On July 1, 1999, Petitioner was released on an Order of Supervision ("OSUP") that required him to report monthly and to pay a $5,000 bond.[3]  Harris Decl. ¶ 11; Resp. Ex. J, ECF No. 10-11;

---

[2] Respondents assert that, in response to the Court's direction to "affirm that they have provided the Court with all facts material to Petitioner's claims and Respondents' opposition to the Petition, and [to] attach as exhibits all records related to those facts," that they "attach all such records to this letter submission."  Resp. at 1 n.1.  However, Respondents' submission is devoid of any records documenting (1) the second 1991 arrest, (2) the 1999 arrest, (3) the 2000 arrest, or (4) the 2002 arrest.  Nor does Respondents' submission contain documentation of the purported disposition of these charges.  Nevertheless, for purposes of this Order, the Court presumes that Respondents' summary of Petitioner's criminal history as a teenager and young adult, contained in the Harris Declaration, is accurate.

[3] The records submitted by Respondents are at times internally contradictory regarding the timeline of Petitioner's incarceration and detention by New York State and federal officials, respectively, and do not necessarily support Respondents' timeline of events.  Respondents submit as an exhibit a "NYS Department of Correctional Services Report of Alien Person Institutionalized" regarding Petitioner, dated June 13, 2000.  Resp. Ex. M, ECF No. 10-14.  This Report appears to indicate that, as of that date, Petitioner was still incarcerated by New York State pursuant to the sentence imposed following his 1997 guilty plea.  *See id.* at 2–3 ("Earliest Release Date: Pending" and "Status In Custody").  Respondents' submission also includes an "Immigration Detainer – Notice of Action" regarding Petitioner, dated December 6,

4

Resp. Ex. K, ECF No. 10-12; Resp. Ex. L, ECF No. 10-13. Respondents assert that Petitioner's 1999 OSUP was revoked and his bond cancelled on or about December 12, 2000, and that Petitioner was taken into custody at that time.[4] Harris Decl. ¶ 13. On December 19, 2000, Immigration and Customs Enforcement ("ICE") requested a travel document for Petitioner from the Consul General of Cambodia in order to effectuate Petitioner's removal, but the Consul General declined to issue the requested travel document. *Id.* ¶ 12.

On August 13, 2001, ICE determined that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future and therefore again released Petitioner on a second OSUP dated August 10, 2001. Harris Decl. ¶ 14;[5] Resp. Ex. O, ECF No. 10-16; Resp. Ex. P, ECF No. 10-17.

---

2000, which was addressed to the Warden of the Queensboro Correctional Facility, suggesting that Petitioner was still incarcerated by New York State on that date. Resp. Ex. N, ECF No. 10-15. Because these facts are not essential to the Court's disposition of the instant motion, the Court need not resolve these discrepancies at this time.

[4] Respondents have not submitted any documentation of this 2000 OSUP revocation and arrest.

[5] The Harris Declaration indicates that this second OSUP was issued on August 13, 2001. This is contradicted by Exhibits O and P, both dated August 10, 2001, which appear to be two versions of the same 2001 OSUP with a slight difference in the day of the month Petitioner was required to report to immigration officials. *See* Resp. Ex. O at 2; Resp. Ex. P at 2.

From August 2001 until April 14, 2026, Petitioner reported as required to ICE per the terms of his OSUP.[6]  Harris Decl. ¶ 15.  None of Petitioner's OSUPs indicate that they were issued pursuant to 8 C.F.R. § 241.13.

Petitioner avers, and Respondents do not dispute, that in the twenty-five years that have elapsed since his 2001 OSUP, Cambodia has yet to issue a travel document for Petitioner that would enable ICE to effectuate his removal.  *See* Pet. ¶¶ 3–4, 20.  Respondents aver that they requested a travel document for Petitioner from the Cambodian Embassy on February 21, 2026 and that the Embassy, on an unspecified date thereafter, requested additional information needed to issue that travel document.[7]  Harris Decl. ¶ 16.

On May 4, 2026, Petitioner was served with a Notice of Revocation of Release dated April 13, 2026 that (1) purported to revoke his August 13, 2001 OSUP pursuant to 8 C.F.R. § 241.13(i); (2) was signed by ICE Detention and Deportation Officer

---

[6] Respondents' submission includes an exhibit that appears to be an additional OSUP dated October 12, 2006.  Resp. Ex. Q, ECF No. 10-18.  Petitioner acknowledges this 2006 OSUP and avers that, "[f]rom 2006 forward, [Petitioner] complied with the terms of his supervision" and "never absconded and committed no new offense."  Pet. ¶ 21.

[7] Respondents' submission contradicts the Harris Declaration, stating that this request was transmitted to the Cambodian Embassy on February 1, 2026.  Resp. at 3.

Savinder Jaspal; and (3) stated that Petitioner would be afforded an informal interview to respond to the reasons for revocation on April 14, 2026.[8] Harris Decl. ¶¶ 17, 19–20; Resp. Ex. R, ECF No. 10-19.

Respondents aver that the additional information requested by the Cambodian Embassy was transmitted to the Cambodian attaché on May 26, 2026. Harris Decl. ¶ 23. Respondents claim that "ICE does not expect any impediments to the processing of Petitioner's travel document and expects a travel document to be issued within two week[s] to thirty days."[9] *Id.* However, Respondents have not included any documentation of communications between ICE and Cambodian officials regarding ICE's efforts to secure a travel document for Petitioner. Respondents assert that, "because Petitioner is subject to a final order of removal, he remains detained at MDC pursuant to 8 U.S.C. § 1231(a)(6)." Harris Decl. ¶ 26.

---

[8] Respondents aver that they intended to take Petitioner into custody on April 14, 2026 but that, through an apparent administrative error, Petitioner was not diverted to Enforcement and Removal Operations ("ERO"). Harris Decl. ¶ 18. Petitioner was subsequently required to report to ICE again on May 4, 2026. *Id.*

[9] To date, the request for travel documents was submitted to the Cambodian Embassy almost four months ago, and Respondents aver that they only recently submitted supplemental documents to the Cambodian attaché in their attempt to secure a travel document for Petitioner.

Petitioner filed the instant Petition and motion for temporary restraining order on May 27, 2026 and May 28, 2026, respectively. *See generally* Pet.; Mot. for Temporary Restraining Order ("Mot."), ECF No. 2. Petitioner alleges that (1) his continuing detention violates his statutory rights under 8 U.S.C. § 1231(a)(6) and his constitutional rights as expressed in *Zadvydas v. Davis*, 533 U.S. 678 (2001) because his removal to Cambodia is not reasonably foreseeable,[10] Pet. ¶¶ 24–30; (2) his re-detention is unlawful because no changed circumstances exist that indicate Petitioner's removal is now reasonably foreseeable, *id.* ¶¶ 31–33; (3) ICE failed to follow its own procedures in re-detaining Petitioner, in violation of his constitutional right to due process, *id.* ¶¶ 34–35; (4) his detention is arbitrary, capricious, and contrary to law, in violation of the Administrative Procedures Act, *id.* ¶ 36; and (5) that he is entitled to a stay of removal to a third county and a meaningful opportunity to seek withholding of removal and protection under the Convention Against Torture; *id.* ¶¶ 37–38.

---

[10] The Court notes specifically that Petitioner contends his removal is not reasonably foreseeable because, to date, no travel document has been issued for him by the Cambodian government, despite a final order of removal dating back more than twenty-five years. The government disputes this and contends that *Zadvydas* and its progeny permit a presumptively reasonable six-month period of detention where, as here, Respondents allege that ICE is in the process of obtaining a travel document and that the request for the document's issuance was made less than six months ago. *See* Resp. at 4. Respondents further contend that the "*Zadvydas* six-month period [did] not begin until ICE detain[ed]" Petitioner. *Id.*

## **LEGAL STANDARD**

"The Second Circuit has established that a party seeking a temporary restraining order must show three things: (1) irreparable harm in the absence of an injunction pending resolution of the action; (2) either a likelihood of success on the merits OR both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that the emergency relief is in the public interest."[11] *Iza v. Larocco*, No. 25-CV-6915 (NJC), 2025 WL 3712274, at *3 (E.D.N.Y. Dec. 22, 2025) (citing *Nat'l Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir. 2018)). "The movant must also show that the balance of equities supports the issuance of an injunction [or temporary restraining order]." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 280 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021); *see also Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 416 F. Supp. 3d 249, 251 (E.D.N.Y. 2019) ("The standards for a preliminary injunction and temporary

---

[11] The Second Circuit draws a distinction between temporary restraining orders that are "prohibitory" and "mandatory" in nature and imposes a higher standard for mandatory temporary restraining orders. *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024). The Court need not decide whether the temporary restraining order Petitioner requests here is prohibitory or mandatory because, even assuming the higher standard for a mandatory order applies, Petitioner has satisfied his burden. *See id.* (holding that a mandatory temporary restraining order "requir[es] that the plaintiff 'show a *clear or substantial* likelihood of success on the merits and make a *strong showing* of irreparable harm'" (citation omitted)).

restraining order are identical."). "When the government is a party to the suit, [a court's] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA*, 17 F.4th at 295 (citing *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020)).

## DISCUSSION

The Court finds that Petitioner has established a substantial likelihood of success on the merits of his claim that the revocation of Petitioner's release violated his rights under 8 U.S.C. § 1231(a)(6) and its implementing regulations. "Two regulations control the [g]overnment's procedures for granting or revoking supervised release under [§] 1231(a)(6)": 8 C.F.R. § 241.4 and § 241.13. *E.M.M. v. Almodovar*, No. 25-CV-8212 (MMG), 2025 WL 3077995, at *3 (S.D.N.Y. Nov. 4, 2025). "An OSUP is issued under [8 C.F.R.] § 241.13 only when it is issued pursuant to the detailed 'special review procedures' described in that section." *Liu v. Genalo*, No. 26-CV-3720 (AT), 2026 WL 1383370, at *3 (S.D.N.Y. May 14, 2026). Where an "OSUP was not issued pursuant to § 241.13's 'special review procedures,' [8 C.F.R.] § 241.4 governs." *Id.* When an OSUP was issued pursuant to § 241.4, "any revocation must be made in accordance with the procedures described in [§ 241.4]." *Id.* at *4.

Under 8 C.F.R. § 241.4(*l*)(2), only the Executive Associate Director of ICE may revoke an OSUP. *Id.* at *4; *Zhang v. Genalo*, 814 F. Supp. 3d 307, 321–22 (E.D.N.Y. 2025). A "Detention and Deportation Officer," however, "is not the Executive Associate Director of ICE or a district director, and there is no delegation order giving [a Detention and Deportation Officer] the authority to revoke release." *Mohammad v. Kurzdorfer*, No. 26-CV-132 (LJV), 2026 WL 657460, at *6 (W.D.N.Y. Mar. 9, 2026); *see also Liu*, 2026 WL 1383370, at *4 (collecting cases). On this clear factual record, then, the Court finds that Petitioner is substantially likely to prevail on the merits of his claim that the May 2026 revocation of his OSUP was unlawful.

Second, the Court finds that Petitioner is likely to establish that "his detention violates due process," requiring Petitioner's immediate release from custody.[12] *Liu*, 2026 WL 1383370, at *4 (citing cases); *see also N.B. v. United States*, 552 F. Supp. 3d

---

[12] Because the Court finds that Petitioner is likely to prevail on his claim that ICE failed to follow its own regulations in detaining him — and that this failure amounts to a violation of due process that independently requires Petitioner's immediate release from custody — the Court does not at this time reach whether Petitioner has established a likelihood of success on the merits of his *Zadvydas* claim that his detention is unlawful because his removal to Cambodia is not reasonably foreseeable. *See Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025) (declining to reach a *Zadvydas* claim when an independent ground for granting a habeas writ existed); *Zhang*, 814 F. Supp. 3d at 328 ("Because the Court agrees with [petitioner] that there are at least two existing independent grounds to grant his petition, it does not reach what the parties have referred to as [petitioner]'s *Zadvydas* claim.").

387, 400 (E.D.N.Y. 2021) ("[A] due process violation may occur if an agency fails to follow [its] own procedures and regulations." (citations omitted)).

Further, in part because the Court has found that Petitioner is likely to prevail on his claim that his detention is unlawful, the Court also finds that Petitioner has made a strong showing of the likelihood of irreparable harm in the event that he is not released from his current detention. "There is no question that detention causes irreparable harm: indeed, every minute that someone is unlawfully denied freedom results in an injury that really can never be remedied." *Iza*, 2025 WL 3712274, at \*8 (quoting *Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579, 595–96 (W.D.N.Y. 2025)). The risk of such irreparable harm is especially pronounced where, as here, Petitioner avers that his aged father is highly dependent on his family to provide for his medical care and that Petitioner's absence during his detention has created hardship for his family in providing that care. Pet. ¶¶ 17, 40. Additionally, Petitioner asserts that his detention violates his constitutional rights. Pet. ¶¶ 34–35. The constitutional aspect of his claims increases the likelihood that he faces irreparable harm if not released from his current detention. *See Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (holding that a district court's finding that a plaintiff is "substantially likely to demonstrate a violation" of constitutional rights "serve[s] as an independent basis for

12

the [] conclusion that the plaintiff would suffer irreparable harm in the absence of preliminary injunctive relief").

The Court has weighed the factors under *Mathews v. Eldridge,* 424 U.S. 319 (1976), which apply when courts in the Second Circuit are called upon to determine "the adequacy of process in the context of civil immigration confinement." *Munoz Materano v. Arteta,* 804 F. Supp. 3d 395, 416 (S.D.N.Y. 2025) (citation omitted). Having considered (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail, *see Mathews*, 424 U.S. at 335, the Court finds that the balance of equities weighs heavily in favor of Petitioner's immediate release from detention. In weighing Respondents' interests, the Court notes that Petitioner was arrested for and convicted of at least one serious crime relating to the illegal possession and sale of narcotics in the 1990s. However, Respondents do not dispute that, notwithstanding this criminal history, Petitioner was released on OSUPs in 1999, 2001, and 2006, and Petitioner has faithfully complied with the terms of these OSUPs and otherwise lived a law-abiding life in the United States since at least 2006. The Court likewise finds that the public interest

weighs in favor of granting this Temporary Restraining Order. *See We The Patriots USA*, 17 F.4th at 295; *Iza*, 2025 WL 3712274, at *8 ("Freedom from unlawful detention is undoubtedly within the public's interest.").

**TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

Petitioner's Motion for a Temporary Restraining Order, ECF No. 2, under Fed. R. Civ. P. 65 is GRANTED. Respondents must release Petitioner from custody **no later than 5:00 PM on June 4, 2026.** Respondents, through counsel, **shall file a letter on the docket no later than 8:00 PM on June 4, 2026**, confirming that Petitioner has been released from custody, and shall send a courtesy copy of that letter by electronic mail to morrison_chambers@nyed.uscourts.gov and to Petitioner's counsel at the email address listed in the Petition.

Further, Respondents are **ENJOINED** from re-detaining Petitioner, absent prior authorization of this Court, while the terms of this Order otherwise remain in effect and the Court considers the merits of the underlying Petition. Respondents shall produce, **no later than 10:00 AM on Monday, June 8, 2026**, documentation of the communications between them and the Cambodian Embassy and attaché related to Respondents' request for the issuance of travel documents for Petitioner, including but not limited to the communications referenced in the Harris Declaration,

ECF No. 10-1 ¶¶ 16, 23. This documentation shall take the form of either (1) emails exchanged between the parties, if they exist; or (2) contemporaneous notes of communications between the parties transmitted via telephone or other means, if emails do not exist. Respondents shall also produce, **no later than 10:00 AM on Monday, June 8, 2026**, documentation of any arrests of Petitioner referenced in the Harris Declaration that have not already been produced, including but not limited to (1) the second 1991 arrest, (2) the 1999 arrest, (3) the 2000 arrest, and (4) the 2002 arrest. Harris Decl. ¶¶ 4, 6–8. This documentation shall also address the disposition of the charges associated with these arrests, as alleged in the Harris Declaration.

Further, Respondents **shall show cause in writing no later than 5:00 PM on Thursday, June 11, 2026**, as to (1) why the Court should not issue a preliminary injunction enjoining Respondents from re-detaining Petitioner during the pendency of this Court's consideration of the Petition and (2) why the Petition for a writ of habeas corpus should not be granted. Respondents' submission shall address whether this case is controlled by *Zhang v. Genalo*, 814 F. Supp. 3d 307 (E.D.N.Y. 2025) and *Liu v. Genalo*, No. 26-CV-3720 (AT), 2026 WL 1383370 (S.D.N.Y. May 14, 2026), as well as the cases cited therein, even if Respondents disagree with the reasoning and result of those decisions. If Respondents contend that *Zhang*, *Liu*, and

15

other similar cases do not control the outcome here, they must explain their basis for asserting that the instant case is distinguishable. **Petitioner may file a reply on or before 9:00 AM on Tuesday, June 16, 2026.**

The parties are also free to confer and propose an alternative briefing schedule that affords them further time to prepare and file their respective submissions on the merits, provided that the parties jointly consent to an extension of the temporary relief granted in this Order pending further proceedings, with whatever conditions they agree may be reasonable and necessary to ensure Petitioner's return to court.

In the alternative, Respondents may file a letter on the docket on or before **5:00 PM on Thursday, June 11, 2026**, indicating that they no longer seek to contest the relief sought in the writ and agree not to re-detain Petitioner absent compliance with the provisions of 8 C.F.R. § 241.4, unless they obtain prior leave of this Court to do so, while still preserving their right to appeal or to seek a modification of this order in the event there is an intervening change in law or a material change in factual circumstances.

The foregoing **Temporary Restraining Order** shall expire on **June 28, 2026, at 12:00 AM** unless it is extended by further Order of this Court for good cause

shown or otherwise.  *See* Fed. R. Civ. P. 65(b)(2).

**CONCLUSION**

For the foregoing reasons, Petitioner's Motion for a Temporary Restraining

Order is GRANTED.  The Court respectfully requests that the Clerk of Court provide

an additional courtesy copy of this Order to the Chief of the Civil Division of the

United States Attorney's Office for the Eastern District of New York by electronic

mail.

**SO ORDERED.**

Dated:  June 4, 2026, 12:00 AM
      Brooklyn, New York         */s/ Nina R. Morrison*
                                    Nina R. Morrison
                                    United States District Judge