UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                    :
CHANSARATH DUONG,                                                   :
                                                                    :
                              Petitioner,                           :
                                                                    :        26-CV-3189 (NRM)
              -v-                                                    :
                                                                    :
RAUL MALDONADO, JR., *in his official capacity*                    :        **ORDER GRANTING**
*as Warden, Metropolitan Detention Center,*                         :        **PETITION FOR WRIT**
*Brooklyn*; WILLIAM P. JOYCE, *in his official*                     :        **OF HABEAS CORPUS**
*capacity as Acting Field Office Director, New York*               :
*Field Office, U.S. Immigration and Customs*                        :
*Enforcement*; TODD M. LYONS, *in his official*                     :
*capacity as Acting Director, U.S. Immigration and*               :
*Customs Enforcement*; MARKWAYNE MULLIN,                           :
*in his official capacity as Secretary, U.S.*                       :
*Department of Homeland Security*; and TODD                         :
BLANCHE, *in his official capacity as Acting*                       :
*Attorney General of the United States*,                            :
                                                                    :
                              Respondents.                          :
                                                                    :
------------------------------------------------------------------X

**NINA R. MORRISON**, United States District Judge:

Petitioner Chansarath Duong is a national of Cambodia who has resided in the

United States since 1982, when he entered as a child refugee.  On May 27, 2026,

Petitioner filed the instant Petition for Writ of Habeas Corpus (the "Petition"), ECF

No. 1 ("Pet.").  Petitioner was arrested by Immigration and Customs Enforcement

("ICE") on May 4, 2026, and was held at the Metropolitan Detention Center ("MDC")

and at other facilities from that date until June 4, 2026, when this Court granted his

Motion for Temporary Restraining Order, ECF No. 2, and ordered his release, *see*

1

*Duong v. Maldonado*, No. 26-CV-3189 (NRM), 2026 WL 1593623 (E.D.N.Y. June 4, 2026) (granting this motion).  The Court assumes the parties' familiarity with the background of this case.  *Id.* at *1–3.

In granting Petitioner's Motion for Temporary Restraining Order, the Court concluded that Petitioner had established, *inter alia,* a substantial likelihood of success on the merits of his claim that Respondents' revocation of his Order of Supervision violated his statutory and constitutional rights.  *Id.* at *4–5.  This Court also ordered Respondents (1) to produce certain documents relevant to Petitioner's criminal history and ICE's communications with Cambodian officials concerning a travel document for Petitioner and (2) to show cause in writing as to why the Petition should not granted.  *Id.* at *5–6.  Respondents have since filed three submissions addressing these issues.  ECF Nos. 14, 18 & 21.  Petitioner's counsel did not file a reply by the June 23, 2026 deadline set by the Court.

Respondents initially produced documentation of only internal ICE communications concerning Petitioner.  ECF No. 15-1.  The parties also jointly moved for an extension of time for Respondents to submit their response to the Court's order to show cause and for Petitioner to submit a reply.  ECF No. 16.  The parties further consented to an extension of the temporary restraining order ("TRO") pending further

2

proceedings. *Id.* The Court granted this extension request, extended the TRO on consent until July 2, 2026, and again ordered Respondents to produce documentation of communications between ICE and Cambodian officials concerning Petitioner's travel documents. Dkt. Order dated June 8, 2026.

In their initial response to the Petition, Respondents represented that, "[o]n February 1,[1] 2026, ICE sent a request for a travel document for Petitioner to the Cambodian Embassy [] in Washington, D.C., after which the Embassy requested additional information needed to issue the travel document." ECF No. 10 at 3.[2] Respondents further represented that, "[o]n May 26, 2026, ICE sent the remaining documentation to the Cambodian attaché." *Id.* However, on June 12, 2026, Respondents filed a letter acknowledging that these were misrepresentations. ECF No. 18 at 2. This letter informed the Court that ICE did not, in fact, make any request for travel documents for Petitioner to Cambodian officials until June 11, 2026 — almost five months later than Respondents originally asserted. *Id.* The June 11,

---

[1] In its decision on the Motion for Temporary Restraining Order, the Court noted that, while Respondents' letter alleged that the request was sent to the Embassy on February 1, the supporting declaration submitted by Respondents alleged that the request was sent on February 21, 2026. *Duong*, 2026 WL 1593623, at *3 & n.7.

[2] All page references are to ECF pagination unless otherwise noted.

3

2026 request was also made more than a month after Petitioner was detained by ICE, and two weeks after the Petition was filed. *Id.* Moreover, Respondents conceded that the June 11, 2026 travel document request "is the first communication between ICE and the government of Cambodia relating to Petitioner's travel document." *Id.* Respondents filed the June 11, 2026 communication between ICE and the Cambodian government on the docket. ECF No. 21.

In an additional submission to the Court dated June 8, 2026, Respondents asserted that "the issue of whether the revocation of [Petitioner's] OSUP was revoked by the proper official is not properly before the Court" because Petitioner "has not challenged the authority of the ICE official who revoked the OSUP," citing the party presentation principle recently restated by the Supreme Court in *Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. ----, 146 S. Ct. 1285 (2026). ECF No. 14 at 1–2. The Court noted that Petitioner had, in fact, contended in the Petition that his OSUP had been unlawfully revoked, and that Respondents still had ample time to present whatever legal arguments and authorities on that issue they wished to bring to the Court's attention because the Court had thus far granted only temporary injunctive relief. Dkt. Order dated June 8, 2026. The Court then directed Respondents to address "whether the provisions of the C.F.R. that govern revocation of Petitioner's

4

OSUP, and that require such revocation to be executed by certain officials, were followed when a Detention and Deportation Officer signed the revocation of the OSUP and whether the revocation otherwise complied with due process." *Id.*

In their most recent submission, Respondents reiterated their general invocation of the party presentation principle but conceded that, should the Court apply the reasoning of *Zhang v. Genalo*, 814 F. Supp. 3d 307 (E.D.N.Y. 2025), and *Liu v. Genalo*, No. 26-CV-3720 (AT), 2026 WL 1383370 (S.D.N.Y. May 14, 2026), to the instant case, then "the Court is likely to conclude that Petitioner's OSUP was improperly revoked under § 241.4." ECF No. 22 at 2. Respondents also asserted that Petitioner's detention pursuant to 8 U.S.C. § 1231(a) was lawful because "Petitioner's removal in the foreseeable future is significantly likely." *Id.* at 3–5.

Having reviewed Respondents' submissions and supporting exhibits, the Court has no difficulty finding that Petitioner's detention violated his statutory and due process rights. "Two regulations control the [g]overnment's procedures for granting or revoking supervised release under [§] 1231(a)(6)": 8 C.F.R. § 241.4 and § 241.13. *E.M.M. v. Almodovar*, No. 25-CV-8212 (MMG), 2025 WL 3077995, at *3 (S.D.N.Y. Nov. 4, 2025). "An OSUP is issued under [8 C.F.R.] § 241.13 only when it is issued pursuant to the detailed 'special review procedures' described in that section." *Liu*,

2026 WL 1383370, at *3.  Where an "OSUP was not issued pursuant to § 241.13's 'special review procedures,' [8 C.F.R.] § 241.4 governs."  *Id.*  When an OSUP was issued pursuant to § 241.4, "any revocation must be made in accordance with the procedures described in [§ 241.4]."  *Id.* at *4.  Under 8 C.F.R. § 241.4(*l*)(2), only the Executive Associate Director of ICE may revoke an OSUP.  *Id.*; *Zhang*, 814 F. Supp.3d at 321–22.  A "Detention and Deportation Officer," however, "is not the Executive Associate Director of ICE or a district director, and there is no delegation order giving [a Detention and Deportation Officer] the authority to revoke release."  *Mohammad v. Kurzdorfer*, No. 26-CV-132 (LJV), 2026 WL 657460, at *6 (W.D.N.Y. Mar. 9, 2026); *see also Liu*, 2026 WL 1383370, at *4 (collecting cases).

While Respondents "disagree with the Court's conclusion that the operative OSUP was issued under [Section] 241.4 and thus could only be revoked under [that section]," ECF No. 22 at 2, nothing in record supports a contrary conclusion — that is, Respondents' own records provide no indication that Petitioner's OSUP was issued pursuant to the special review procedures of Section 241.13.  Accordingly, ICE was required to comply with the provisions of Section 241.4 governing revocations of OSUPs issued pursuant to Section 241.4.  ICE failed to follow these procedures, and the May 2026 revocation of Petitioner's OSUP was unlawful.  This conclusion squares

6

with Respondents' concession that, if the Court adheres to the earlier reasoning in

*Liu* and *Zhang*, that same analysis would control the outcome of this case. ECF No.

22 at 2.

The party presentation principle presents no barrier to this conclusion. "The

party presentation rule reflects the principle that courts normally decide only

questions presented by the parties." *United States v. Graham*, 51 F.4th 67, 80 (2d

Cir. 2022) (citation omitted). In *Margolin*, the Supreme Court did not expand this

longstanding doctrine but simply restated the existing rule that federal courts "rely

on the parties to 'frame the issues for decision' and decide 'only the questions

presented.'" 608 U.S. ----, 146 S.Ct. at 1288 (quoting *United States v. Sineneng-Smith*,

590 U.S. 371, 375–76 (2020)). Here, Petitioner clearly raised the issue of ICE's failure

to follow 8 C.F.R. §§ 241.4(*l*) and 241.13, Pet. ¶¶ 34–35, and framed the issue for

decision as whether "ICE's failure to follow its own mandatory procedures violated

those regulations and deprived [Petitioner] of due process," *id.* ¶ 35. This was

sufficient to raise the issue and satisfy the party presentation rule. *Cf. Jaffe v.

Fitzgerald*, No. 06-CV-0317 (DGT) (WDW), 2009 WL 804740, at *5 (E.D.N.Y. Mar. 27,

2009) ("To sufficiently raise an issue, a party must generally clearly state their claim

and provide some supporting authority.").

7

Moreover, unlike in *Margolin*, this Court provided Respondents ample opportunity to respond specifically to the applicability of Section 241.4 to Petitioner in their briefing on the merits of the Petition. Dkt. Order dated June 8, 2026; *see also Margolin*, 608 U.S. ----, 146 S.Ct. at 1288 (holding that the Court of Appeals "*sua sponte* addressed a much broader [question than the one presented by the plaintiffs] and remanded for further proceedings on that question . . . without giving either side a chance to address its theory"). This Court will not require Petitioner to elaborate upon the grounds for his (clearly raised) claim that ICE failed to follow its own procedures in complete and prescient detail — especially in light of the fact that Petitioner was unlawfully detained at the time the Petition was filed, and Respondents were in exclusive possession of the documents that would reveal the exact contours of the procedural defects in ICE's purported revocation of Petitioner's OSUP.

The Court also finds that, because ICE failed to follow its own regulations in seeking to revoke Petitioner's OSUP, Respondents violated Petitioner's due process rights. *See N.B. v. United States*, 552 F. Supp. 3d 387, 400 (E.D.N.Y. 2021) ("[A] due process violation may occur if an agency fails to follow [its] own procedures and regulations." (citations omitted)).

8

Finally, in light of the fact that he is entitled to relief on other grounds, the Court need not reach Petitioner's *Zadvydas* claim.  *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) (holding that detention under Section 1231(a) violates due process if removal is not "reasonably foreseeable").  The Court notes, however, that this claim could well have been improperly denied had Respondents not discovered and corrected their initial, serious misrepresentations concerning the timing of ICE's communications with Cambodian officials seeking a travel document for Petitioner.  Those misrepresentations only came to light after the Court ordered counsel for Respondents to obtain and submit the full record of its actual communications to and from Cambodian officials.  And only at that time did Respondents inform the Court that ICE did not, in fact, request a travel document from the Cambodian Embassy until *after* Petitioner was detained and had filed the instant Petition —  which, of course, is highly relevant to the question of whether Petitioner's removal was reasonably foreseeable, and thus lawful under *Zadvydas,* at the time he was detained. The fact that travel documents from the Embassy were not requested until June 11 also raises legitimate questions about whether Respondents were attempting to defeat the Petition with an impermissible *post hoc* rationalization of Petitioner's unlawful detention.  *See Inestroza Carbajal v. Frazier*, No. 26-CV-2778 (SJB), 2026

9

WL 1309265, at *1 (E.D.N.Y. May 12, 2026) ("[A]n executive agency, like ICE, is bound by the bases it used to justify its decision—here the arrest and detention—in the first instance, not reasons it comes up with afterwards."). However, because ICE's violations of Petitioner's statutory and constitutional rights through its improper revocation of Petitioner's OSUP are sufficient to grant the Petition, the Court makes no findings as to Petitioner's *Zadvydas* claims. *See Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025) (declining to reach a *Zadvydas* claim when an independent ground for granting a habeas writ existed); *Zhang*, 814 F. Supp. 3d at 328 ("Because the Court agrees with [petitioner] that there are at least two existing independent grounds to grant his petition, it does not reach what the parties have referred to as [petitioner]'s *Zadvydas* claim.").

/ / /

10

For the foregoing reasons, the Petition is granted.  Respondents are enjoined from re-detaining Petitioner during the pendency of his removal proceedings without prior leave of this Court.  Petitioner's counsel may make a fee application under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, within the time provided by the Local Rules.

**SO ORDERED.**


Dated:  June 26, 2026
Brooklyn, New York                          _/s/ Nina R. Morrison_
                                            Nina R. Morrison
                                            United States District Judge